## JULIA L. PYE *vs.* CITY OF MANKATO.

### January 31, 1887.

Municipal Corporation — Collection of Surface Water — Discharge upon Private Property.—While a city would not be liable merely for wholly failing to provide drainage or sewerage, nor, probably, for the insufficient size or capacity of gutters or sewers, provided the adjoining property is not left in any worse condition than if no gutters or sewers whatever had been constructed, yet if the city intercepts the natural flow of surface water, and gathers it up, and conducts it in another direction by means of a gutter or other artificial channel, and constructs the gutter of inadequate capacity, in consequence of which the water is cast in large and injurious quantities upon the premises of another, this amounts to a positive trespass, for which the city is liable.

Plaintiff brought this action in the district court for Blue Earth ·county to recover damages to a lot on Washington street in Mankato, resulting from the acts of defendant in collecting water and ·discharging it upon plaintiff's lot. A jury was waived, and the action tried before *Severance,* J., who ordered judgment for plaintiff. A new trial was refused, and the defendant appealed.

*James Brown,* for appellant.

*Daniel Buck* and *Collester & Foster,* for respondent.

MITCHELL, J. The ground on which a new trial was asked, and the only point urged in this court, was that "the decision of the court is not justified by the evidence, and is contrary to law." As counsel for appellant nowhere indicates wherein the decision is not justified by the evidence, we shall assume that the findings of fact are supported by the evidence; thus leaving as the only question for consideration whether these findings justify the conclusion of law that

plaintiff is entitled to recover.   We shall assume, in favor of appellant, that this was "surface water," and not a "water-course."   Indeed, upon the facts found by the court, there is no doubt whatever upon this point.

The material facts found are that originally this water, following a depression in the ground, flowed southerly, across Washington street, (easterly of plaintiff's premises,) and from thence finally found its way into the Minnesota river; that the city graded up Washington street some two feet above the natural surface of the ground, thus intercepting the flow of the water, as formerly, across that street. The city also constructed a gutter on the north side of Washington street, into which to gather up and carry this water westerly, and past plaintiff's premises, (which abutted on the north side of Washington street,) into the river; that this gutter was *negligently* and wrongfully constructed, wholly insufficient in capacity to contain and carry off the water, and, as a consequence, it overflowed and was cast in large and injurious quantities upon the land of plaintiff.

The law upon the subject of the liability of municipal corporations for injuries to private property, in consequence of being overflowed with surface water caused by improvements made or work done upon streets, is left in a state of great uncertainty by the adjudicated cases, among which there is much conflict.   It is impossible to reconcile all of the cases on the subject, and hence we will confine ourselves to the statement of certain principles, which we think are settled by our own decisions, and then attempt to apply these principles to the facts of this case; and—

*First.* We hold that a municipal corporation is liable for damages caused to private property by grading streets when a private owner of the soil over which the streets are laid would be liable if improving it for his own use.   *O'Brien* v. *City of St. Paul,* 25 Minn. 331; *Dyer* v. *City of St. Paul,* 27 Minn. 457, (8 N. W. Rep. 272;)   *McClure* v. *City of Red Wing,* 28 Minn. 186, (9 N. W. Rep. 767;)   *Henderson* v. *City of Minneapolis,* 32 Minn. 319, (20 N. W. Rep. 322.)

*Second.* We do not admit the doctrine of servitudes of the civil law, but have adopted the common-law rule that surface water is a common enemy, which each owner, in the necessary and proper improve-

ment of his land, may get rid of as best he may, subject, however, to the restriction of the maxim that a man must so use his own as not unnecessarily to injure another. *Alden* v. *City of Minneapolis*, 24 Minn. 254, 262; *O'Brien* v. *City of St. Paul*, 25 Minn. 331; *Hogenson* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 224, (17 N. W. Rep. 374;) and consequently—

*Third.* A city is not liable for consequential injuries to adjoining property, resulting from raising the grade of a street, although the result may be to interfere with the flow of surface water, and cause it to accumulate on the premises of another. *Lee* v. *City of Minneapolis*, 22 Minn. 13; *Alden* v. *Same*, 24 Minn. 254, 263; *O'Brien* v. *City of St. Paul, supra; Henderson* v. *City of Minneapolis, supra.*

*Fourth.* Neither is a city liable for wholly failing to provide drainage or sewerage, nor for a mere error of judgment as to the *plan* of drainage, nor for the insufficient size or capacity of drains or gutters for the purpose intended, at least *if the adjoining property is not in any worse condition than if no gutters or drains whatever had been constructed.* *Alden* v. *City of Minneapolis, supra; McClure* v. *City of Red Wing, supra; Henderson* v. *City of Minneapolis, supra.*

*Fifth.* But a city will be liable if it collects and gathers up surface water by artificial means, such as sewers and drains, and casts it upon the premises of another in increased and injurious quantities. Such an act amounts to a positive trespass. *O'Brien* v. *City of St. Paul*, 18 Minn. 163, (176;) *Kobs* v. *City of Minneapolis*, 22 Minn. 159; *O'Brien* v. *City of St. Paul*, 25 Minn. 331; *McClure* v. *City of Red Wing*, 28 Minn. 186, (9 N. W. Rep. 767;) *Hogenson* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 224, (17 N. W. Rep. 374.)

Upon the facts as found by the court, we think this case falls within the principle last stated. The city would not have been liable merely for interfering with the flow of surface water by raising the grade of Washington street. Neither would it probably have been liable if it had omitted entirely to construct a drain or gutter for this water, nor if, by constructing a gutter of inadequate capacity, it had left plaintiff's premises in no worse condition than if it had failed to construct one at all. But in this case it is not strictly the failure to construct adequate gutters to carry off the water that is complained of; but what

is complained of is the *positive act* of casting water, in large and injurious quantities, upon plaintiff's land, (which otherwise would not have gone there,) by means of this gutter,—an act which amounted to a positive invasion of his property.    Upon neither principle nor authority is there an exemption from liability when an individual has received an injury, accomplished by a corporate act which is in the nature of a trespass upon his property.    It is immaterial whether this gutter was expressly constructed in order to cast this water on plaintiff's land, or whether it was so constructed that the flooding must be the necessary result.    Having, after intercepting the natural flow of this water, undertaken to gather up and conduct it in another direction, by an artificial channel, it was incumbent on the city to use reasonable care to do this in such a way as not to cause a positive trespass upon the lands of others.    To fail to do this is negligence. Such was the fact in this case, and this brings it within the principle of the cases last cited.    See, also, *Ashley* v. *Port Huron*, 35 Mich. 296.

Order affirmed.